# COURT OF APPEALS OF VIRGINIA

## Record No. 1351-25-3

TONY RAY COOK, JR.

v.

CHRISTOPHER TYLER SCEARCE, ET AL.

Present: Chief Judge Decker, Judges Raphael and White

Argued by videoconference

Opinion Issued August 4, 2026[*]

### FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Brian H. Turpin, Judge

Miller S. Moreau (Williams & Light, on brief), for appellant.

Lee H. Turpin (Lee Hendricks Turpin, PC, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE KIMBERLEY SLAYTON WHITE

 Tony Ray Cook, Jr. (father) appeals the circuit court's order granting Christopher Tyler

Scearce's (stepfather) petition to adopt father's biological child, W.C.[1]  Father argues that the

circuit court erred in finding that he withheld his consent to the adoption contrary to the child's

best interest.  Finding no error, we affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Initials are used to protect the identity of the minor child.

BACKGROUND[2]

We view the evidence in the light most favorable to mother and stepfather, as the prevailing parties below, and we grant them the benefit of all reasonable inferences. *Chaphe v. Skeens*, 80 Va. App. 556, 559 (2024). W.C. was born to father and Bethany Touchstone Scearce (mother) in July 2017. Shortly after, father was diagnosed with schizophrenia and bipolar disorder. Mother petitioned for sole custody of W.C., which the Juvenile and Domestic Relations District Court of Pittsylvania County granted, along with reasonable visitation to father "on dates and times and under terms as mother may agree." Rather than contacting mother to request visitation, father moved the JDR court to modify visitation several times. At hearings on those motions, father admitted that he was not compliant with his mental health medications. The JDR court dismissed father's motions because he failed to establish a material change in circumstances warranting a modification to the visitation order.

In July 2023, father contacted mother requesting visitation with W.C. Citing safety concerns, mother forced several conditions on father's visitation. She required the parties to meet at the home of her brother, Matthew Touchstone. Mother dictated that father had to introduce himself to W.C. as a friend and always remain five feet from the child. Lastly, mother required father to disclose his medications to her. Father refused to comply with those terms, so has not seen W.C. in several years.

W.C. has lived with mother for his entire life. In April 2018 stepfather joined W.C. and mother in the home as a family. Mother and stepfather married in April 2024. Stepfather developed a healthy relationship with W.C., and he and mother provided W.C. emotional and financial support. In February 2025, stepfather petitioned the circuit court to adopt W.C., with

---

[2] "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

mother's consent and approval. Father objected. He asserted that he had not abandoned W.C., even though he had not seen the child in several years. He claimed that compliance with mother's visitation conditions would endanger him.

At a hearing on the adoption petition, the parties presented evidence as outlined above. Father testified that he was undergoing treatment and taking medication to treat his schizophrenia and bipolar disorder but provided no documentation from his treatment providers identifying his medications or progress in treatment. Father maintained that he accepted all of mother's terms for visitation aside from the meeting location and introduced emails to support that claim. In those emails, however, father expressly refused to introduce himself as a friend and did not provide mother with a list of his medications. Father also testified that he objected to the meeting location because Touchstone was hostile and a "professional fighter"; he provided no additional evidence of Touchstone's alleged professional career in combat. In response, mother disputed that her brother was, in fact, a professional fighter.

At the conclusion of the evidence and argument, the circuit court found that father withheld his consent to stepfather's adoption contrary to the best interests of W.C. In reaching this decision, the circuit court made factual findings as required under Code § 63.2-1205. The circuit court found that a change in custody would be devastating for W.C. because he was seven years old and did not know father. W.C. had healthy and stable relationships with his mother and stepfather—his sole providers with whom he had lived his entire life. In addition, the circuit court found that father was unable to assume custody of W.C. due to his mental health struggles. The circuit court rejected father's argument that mother had "thwarted" his efforts to assert his parental rights or establish a relationship with W.C., noting that father "only made minimal efforts" to assert his rights. It found that mother's conditions for visitation were reasonable under the circumstances and that father had refused to comply. The circuit court granted stepfather's petition to adopt W.C. Father appeals,

arguing that the circuit court "improperly applied or failed to consider the relevant factors stated in Code § 63.2-1205" when finding that he withheld his consent to the adoption contrary to W.C.'s best interest.

ANALYSIS

"Adoption in Virginia is solely a creature of statute." *Moroney v. Majerus*, 82 Va. App. 737, 753 (2024) (quoting *Perkins v. Howington*, 82 Va. App. 1, 8 (2024)). "Virginia law recognizes five types of adoptions," including stepparent adoptions, which is the type of adoption at issue here. *Id.* The requirements for a stepparent to adopt a stepchild are outlined in Code § 63.2-1201. Generally, consent of both birth parents is necessary to grant a petition for stepparent adoption. Code § 63.2-1201 (requiring the spouse of the stepparent to join the stepparent's petition to show consent); Code § 63.2-1202(A) (requiring a birth parent's written consent to adoption). But under Virginia's statutory framework, the circuit court may grant a stepparent's petition for adoption over a birth parent's objection in certain circumstances. Code § 63.2-1203(A).

Given the fundamental nature of the parent-child relationship, "adoption cases invoke significant substantive and procedural safeguards to protect the biological parent's due process rights." *Berry v. Barnes*, 72 Va. App. 281, 288-89 (2020) (quoting *Copeland v. Todd*, 282 Va. 183, 198 (2011)). These safeguards are especially important when the biological parent opposes the adoption, which results in the involuntary termination of parental rights. *Copeland*, 282 Va. at 198. Before a court may "grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would *promote* the child's best interests." *Chaphe*, 80 Va. App. at 567 (emphasis added) (quoting *Copeland*, 282 Va. at 197). To satisfy the heightened constitutional standard of due process, Code § 63.2-1205 "encompass[es] far more than mere consideration of the child's best interests as defined in cases involving a contest between natural

parents." *Geouge v. Traylor*, 68 Va. App. 343, 370 (2017) (quoting *Copeland*, 282 Va. at 200).

The statutory factors representing the heightened standard are:

> the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

Code § 63.2-1205. "Because the factors 'focus on *both* the parent and child,' the statute 'pass[es] constitutional due process scrutiny' by 'provid[ing] for consideration of parental fitness and detriment to the child' . . . ." *Chaphe*, 80 Va. App. at 567 (first and second alterations in original) (quoting *Copeland*, 282 Va. at 199).

The stepparent has the burden of proof to establish the child's best interest under these statutory factors by clear and convincing evidence. *Frye v. Spotte*, 4 Va. App. 530, 532 (1987). If "the circuit court properly considered the statutory factors [under Code § 63.2-1205], we can reverse its conclusions only if they are beyond the pale of reasonableness." *Geouge*, 68 Va. App. at 371. We "will not second-guess the circuit court's exercise of judgment regarding the statutory factors" because "[t]he weighing of the statutory factors . . . is, by necessity, fact-specific and highly discretionary," and is necessarily vested in the circuit court as the part of the judicial branch that "comes into the closest contact with the child, the biological parents, and the prospective adoptive parents." *Moroney*, 82 Va. App. at 755 (quoting *Chaphe*, 80 Va. App. at 564). Accordingly, we will not disturb a circuit court's findings under Code § 63.2-1205 "'unless plainly wrong or without evidence to support' them." *Geouge*, 68 Va. App. at 347 (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014)).

On appeal, father contends that the circuit court's finding that he withheld his consent to stepfather's adoption contrary to the best interests of the child is beyond the pale of reasonableness. For the following reasons, we disagree.

A. Father's parental fitness

The first four factors of Code § 63.2-1205 required the circuit court to consider father's parental fitness. These factors are: 1) father's effort to obtain or maintain legal and physical custody of W.C.; 2) father's current willingness and ability to assume full custody of W.C.; 3) whether father's efforts to assert parental rights were thwarted by mother; and 4) father's ability to care for W.C. Code § 63.2-1205.

The record supports the circuit court's findings. First, the circuit court reasonably found that father made no efforts to obtain or maintain legal and physical custody of W.C. Shortly after W.C.'s birth, the JDR court awarded mother sole legal and physical custody of W.C. and granted father visitation rights "on dates and times and under terms as mother may agree." Since then, father has moved unsuccessfully to amend his *visitation* with W.C. but he never petitioned for custody. Custody and visitation are distinct legal concepts, and visitation is not a prerequisite to obtaining custody. *See Moore v. Joe*, 76 Va. App. 509, 517-18 (2023) (distinguishing between custody and visitation). Father could have petitioned for custody of W.C. at any time but chose not to do so.[3] *See* Code § 20-124.1, -124.2 (explaining the process for petitioning for child custody).

Even if we assume that father was willing to assume full custody of W.C. at the time of the adoption hearing, the evidence on the record supports the circuit court's finding that father was unable to do so. Father's bipolar disorder and schizophrenia prevented him from assuming

---

[3] At oral argument, counsel for Cook did not assert that Cook was seeking custody of W.C.

- 6 -

custody and care of W.C. when the child was a baby, which was the basis for the JDR court's award of sole legal and physical custody to mother with visitation to father under mother's terms.

Mother testified that father had a history of noncompliance with his mental health medications. Father claimed that he was undergoing treatment and compliant with medication, but he did not provide any supporting documentation, including prescriptions or treatment records. And he never provided mother with a list of his current medications, contradicting his testimony that he was willing to abide by this requirement for visitation with W.C. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented," and the circuit court was not required to accept father's claim about his treatment compliance. *Harvey v. Flockhart*, 65 Va. App. 131, 146 (2015) (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)). Given father's unwillingness to provide information about his medications and treatment to the circuit court or mother, the circuit court was not plainly wrong to conclude that his mental health diagnoses rendered him unable to assume full custody of W.C.

We also reject father's claim that mother thwarted his relationship with W.C. Mother testified that for her and W.C.'s safety, she required father to comply with several terms for visitation, which the circuit court had previously found reasonable given father's mental health. Both mother and father acknowledged that mother imposed the conditions because of father's mental health. Father testified that he was willing to comply with most of mother's conditions, including that he would introduce himself as a friend when meeting W.C. But father's own evidence contradicted his testimony. Although father claimed that Matthew Touchstone was a "professional fighter," he provided no corroboration of that claim and mother disputed its veracity. The circuit court was entitled to reject father's testimony on these issues as not credible

and conclude that his own failures to abide by reasonable visitation conditions impeded his parental rights with W.C., not mother. *Harvey*, 65 Va. App. at 146.

The record supports the circuit court's findings that father was not a fit parent under these factors, so we "will not second-guess the circuit court's exercise of judgment." *Moroney*, 82 Va. App. at 755 (quoting *Chaphe*, 80 Va. App. at 564). We now turn to the circuit court's findings regarding detriment to the child.

B. Detriment to the child

The remaining statutory factors require a court to consider whether continuing the relationship between father and W.C. would be detrimental to W.C.'s welfare. These factors are: 1) W.C.'s age; 2) the quality of any previous relationship between father and the child; 3) the duration and suitability of W.C.'s present custodial environment; and 4) the effect of a change of physical custody on the child. Code § 63.2-1205.

The record supports the circuit court's findings that a continued relationship between father and W.C. would be detrimental to W.C.'s welfare. At the time of the trial, W.C. was seven years old and did not know father; they had not seen each other in approximately six years. W.C. has lived with mother and stepfather since 2018; he enjoyed healthy and stable relationships with both and considered stepfather to be his father. Stepfather and mother emotionally and financially support W.C. Given W.C.'s tender age, his current supportive environment, and non-existent relationship with father, the circuit court reasonably found that a change in physical custody would devastate the child.

On brief, father concedes that W.C.'s current living environment with mother and stepfather is suitable. Still, he argues that the circuit court failed to expressly weigh the effect of W.C.'s age as a statutory factor. We have held that a parent's constitutional rights are adequately protected when a circuit court explicitly and comprehensively considers each factor in Code

§ 63.2-1205. *Copeland*, 282 Va. at 200-01. But contrary to father's argument, the circuit court was not required to assign *weight* to the factors under Code § 63.2-1205. *See Moroney*, 82 Va. App. at 755 ("weighing of the statutory factors [in Code § 63.2-1205] is, by necessity, fact-specific and highly discretionary" (alteration in original) (quoting *Chaphe*, 80 Va. App. at 564)). The circuit court expressly considered W.C.'s age, which is reflected in its order granting stepfather's petition for adoption. The circuit court lists the factual findings it made "[a]fter . . . considering the factors in Section 63.2-1205." By expressly considering all the factors related to the child's wellbeing, including W.C.'s age, the circuit court met father's due process rights.[4] *Copeland*, 282 Va. at 200-01. Accordingly, the evidence supports the circuit court's factual findings regarding the detriment to the child, so we will not disturb its findings on appeal. *See Geouge*, 68 Va. App. at 347 (quoting *Bristol Dep't of Soc. Servs.*, 64 Va. App. at 44).

C. Balancing of factors

Code § 63.2-1205 also requires the circuit court to consider the totality of the evidence. Only after considering the statutory factors together can the circuit court reasonably find that a parent withheld their consent to the adoption contrary to the child's best interest.

The circuit court's findings, supported by the record, established that father was not a fit parent to W.C. and that a change in custody would devastate the child. Considering these factors together, we find no error in the circuit court's finding that father objected to stepfather's adoption petition contrary to the child's best interests. "When, as here, the circuit court reviewed the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision." *Geouge*, 68 Va. App. at 372.

---

[4] Father also contests the circuit court's findings regarding detriment to the child by again asserting that mother had thwarted his parental relationship. As we have already discussed, the record supports the circuit court's finding that mother did not thwart father's relationship with W.C.

- 9 -

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*